**Ruben Castaneda SOTO, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. A14–92–00133–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 30, 1993.

Discretionary Review Refused Jan. 26, 1994.

J.C. Carroll, Houston, for appellant.

Rikke Graber, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and ELLIS and LEE, JJ.

## OPINION

ELLIS, Justice.

Appellant, Ruben Castaneda Soto, appeals his judgment of conviction for aggravated sexual assault. TEX.PENAL CODE ANN. § 22.-021 (Vernon 1989). The jury rejected his not guilty plea and, after finding the enhancement paragraph of the indictment to be true, assessed punishment at fifteen (15) years confinement in the Institutional Division of the Texas Department of Criminal Justice. We affirm.

On January 27, 1990, the complainant met some friends at Charlie's Lounge on Laura Koppe Road at about 10:00 p.m. When the lounge closed at 2:00 a.m., her friends had left without her so she began walking the eight blocks to her home. As she walked

down Laura Koppe Road, appellant, along with a passenger, approached her in a green automobile. When they asked her if she wanted a ride, she told them that she did not, so they drove off. Soon thereafter, appellant and his passenger approached the complainant a second time and again asked her if she wanted a ride. When she said that she did not, appellant drove the car in front of her to block her path. The passenger got out of the car, grabbed the complainant and put her in the front seat between himself and appellant. The complainant testified that she was able to see the faces of the two men because of the street lights on Laura Koppe Road.

They drove down Laura Koppe Road and turned on Comden. At the end of Comden, they turned down a sidestreet that also had street lights. They stopped there and appellant told the complainant to take off her clothes. When she pleaded with him, he pulled out a switchblade knife and told her that he would kill her. Appellant cut off the complainant's skirt, climbed on top of her and hit her with his fists until she complied. Appellant proceeded to force the complainant to have intercourse with him.

After appellant sexually assaulted the complainant, his passenger did the same. While the passenger was having forceful intercourse with the complainant, appellant put his penis in her mouth. When the passenger was through, appellant had sexual intercourse with the complainant a second time. The complainant testified that throughout the experience, appellant held the switchblade knife to her neck.

After the assault, appellant told the complainant that he was going to kill her. The passenger, however, talked appellant into letting her go. The passenger shoved the complainant out of the car and as they drove away, she saw the license plate number and memorized it. A police investigation of the license plate number led to appellant. His picture was placed in a photospread and the complainant identified him. She also identified him in court at trial.

Appellant asserts five points of error. First, that the trial court erred when it denied his motion to suppress the photographic identification array. Second, that the trial court erred in denying his objection to the photographic array which appellant asserts is suggestive. Third, that the trial court erred in overruling his motion for instructed verdict, contending that the State failed to prove that appellant was the individual who committed the acts alleged with a weapon. Fourth, that the evidence was insufficient to sustain a conviction based on the charge given to the jury. Finally, that the trial court erred in not granting a mistrial when the prosecutor asserted his personal opinion about the case.

Appellant's first two points of error involve the photospread used by the complainant to identify appellant. He contends first, that it should have been suppressed and second, that it should not have been introduced into evidence because it was suggestive. Appellant asserts that the suggestiveness of the photospread led to an in-court misidentification. We will discuss these two points simultaneously.

■ The admissibility of an in-court identification is determined by a two-pronged test:

1. The photographic display procedure must be impermissibly suggestive; and

2. The suggestive procedure must give rise to a very substantial likelihood of irreparable misidentification.

*Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Cantu v. State*, 738 S.W.2d 249, 251 (Tex.Crim.App.), *cert. denied*, 484 U.S. 872, 108 S.Ct. 203, 98 L.Ed.2d 154 (1987). These steps require a "totality of the circumstances" analysis in which five factors are considered: (1) opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Cantu*, 738 S.W.2d at 252 (citing *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)).

Appellant asserts that the photospread was impermissibly suggestive because he was the only person pictured who had a mole on his face. He analogizes *Rawlings v. State*, 720 S.W.2d 561 (Tex.App.—Austin 1986, pet. ref'd) wherein the court held that the photographic identification of a tattoo was impermissibly suggestive. *Id.* at 577. However, in *Rawlings,* the court analysized the five factors and found, from the totality of the circumstances, that that the identification was not reliable. *Id.* at 576. The victim in *Rawlings* had only seen two inadequate photographs of the tattoo and had described the tattoo differently than the one that appeared on the defendant's hand. *Id.* The present case is not analogous to *Rawlings* because all indicia of reliability are more than sufficient here.

First, the complainant had ample opportunity to view appellant at the time of the crime. She testified that she sat shoulder-to-shoulder with appellant and his passenger in the front seat of the car while they drove to the place where the assault occurred. She stated that she could see his face because of the street light illumination. She further testified that throughout the assault she could see his face and that he was close enough for her to feel and smell his breath.

Second, it is evident from the complainant's testimony that she was paying particular attention to appellant's face. She testified repeatedly that she "was only watching his face" and that she was "trying to see" his face during the assault. Furthermore, the facts that she memorized the license plate number and was able to describe both of the assailants and the car are indicative of the high degree of attention she was paying during the crime.

Third, the evidence indicates that the complainant gave an accurate description of appellant. The investigating officer assigned to the case, Sergeant M.J. Vasser, took the complainant's descriptions of her assailants and the license plate number she had memorized. His investigation of the license plate number led to appellant. He then did a criminal history check on appellant and was able to obtain a mug shot of him. Sergeant Vasser testified that the description given by the complainant matched the picture of appellant, which indicates that her description was accurate.

Fourth, the complainant demonstrated a high level of certainty in her identification of appellant. Sergeant Vasser testified that the complainant only looked at the photospread for a few seconds before she made a positive identification. Prior to showing her the photospread, Sergeant Vasser warned the complainant that he did not know whether the man who assaulted her was in the array and that she was not obligated to identify anyone. Despite the warnings, she made an immediate positive identification of the man Sergeant Vasser had tracked the license plate number to.

Finally, there was a very short time period between the assault and the complainant's identification of appellant. The assault occurred on January 28th and the complainant identified appellant in the photo array on February 6, just nine days later. After reviewing the totality of the circumstances, we hold that the photographic display was not impermissibly suggestive and that there was no likelihood of irreparable misidentification. Appellant's first and second points of error are overruled.

In appellant's third and fourth points of error, he argues that the State failed to prove he exhibited a deadly weapon during the commission of the crime. First, he asserts that the court erred in overruling his motion for an instructed verdict because the State did not prove that he was the individual who committed the acts with a weapon. Second, he contends that the evidence was insufficient to sustain a conviction based on the charge given to the jury. These points of error will be discussed together.

The jury charge read, in pertinent part: "Deadly weapon" means anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

Now, if you find from the evidence beyond a reasonable doubt that on or about the 28th day of January, 1990, in Harris Coun-

ty, Texas, the defendant, Ruben Castaneda Soto, did then and there unlawfully intentionally or knowingly by the use of physical force or violence or by threatening the present use of force or violence against [complainant] not the spouse of the defendant, cause the penetration of the female sexual organ of [complainant] by placing his sexual organ in the female sexual organ of [complainant] wihtout [sic] the consent of [complainant] and in the course of the same criminal episode the defendant used or exhibited a deadly weapon, namely, a knife, then you will find the defendant guilty of aggravated sexual assault as charged in count one of the indictment.

■■■ A challenge to a ruling on a motion for instructed verdict is in actuality a challenge to the sufficiency of the evidence. *Madden v. State,* 799 S.W.2d 683, 686 (Tex. Crim.App.1990), *cert. denied,* 499 U.S. 954, 111 S.Ct. 1432, 113 L.Ed.2d 483 (1991). In reviewing the sufficiency of the evidence, an appellate court must view the evidence in the light most favorable to the verdict to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–2789, 61 L.Ed.2d 560 (1979); *Ransom v. State,* 789 S.W.2d 572, 577 (Tex.Crim.App. 1989), *cert. denied,* 497 U.S. 1010, 110 S.Ct. 3255, 111 L.Ed.2d 765 (1990). The jury, as the trier of fact, is the sole judge of the credibility of the witnesses. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). If there is evidence to establish that the defendant is guilty beyond a reasonable doubt, and the trier of fact believes that evidence, we cannot reverse the judgment on sufficiency of the evidence grounds. *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988).

A "deadly weapon" is:

(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

TEX.PENAL CODE ANN. § 1.07(a)(11) (Vernon 1974).

■■■ Thus, the State may prove that an object is a deadly weapon by adducing sufficient evidence that it was designed, made or adapted for the purpose of inflicting death or serious bodily injury. If the evidence is adequate, no other proof is required to establish that the object is a deadly weapon. In other words, it is not necessary to show that the object is actually capable of causing death or serious bodily injury. *Thomas v. State,* 821 S.W.2d 616, 620 (Tex.Crim.App.1992).

Alternatively, the State may prove that an object, not qualifying as a deadly weapon by its design within the meaning of Section 1.07(a)(11)(A), is a deadly weapon if it is *actually used or intended to be used* in such a way so as to be capable of causing death or serious bodily injury within the meaning of Section 1.07(a)(11)(B). *See id.* "Whether a particular knife is a deadly weapon by design, a deadly weapon by usage, or not a deadly weapon at all, therefore, depends upon the evidence." *Id.*

■■ Wounds need not be inflicted before a knife can be considered a deadly weapon. *Davidson v. State,* 602 S.W.2d 272, 273 (Tex. Crim.App. [Panel Op.1980). If there was no actual injury, the State is required to support the knife's capacity to cause serious bodily injury or death by factors such as the manner of use, the size of the blade, threats made by the accused, or the physical proximity of the accused and his victim. *Blain v. State,* 647 S.W.2d 293, 294 (Tex.Crim.App. 1983).

■■ These factors are sufficiently met in this case. As to the manner of use of the knife, the complainant testified that appellant popped the switchblade knife in her face and told her to take off her clothes. He also told her that he would kill her if she did not comply. She further testified that he used the knife to cut her skirt and held it to her neck throughout the sexual assault.

■■ Merely showing a knife to a victim constitutes a "use" of the knife under Section 1.07(a)(11)(B). *Tisdale v. State,* 686 S.W.2d 110, 115 (Tex.Crim.App.1984). In *Tisdale,* when the victim opened the cash register, the appellant placed his hand over the cash tray. The victim grabbed his hand and said, "No,"

to which the appellant replied, "Yes," and produced a knife. The victim backed up and the appellant took the money from the cash tray. The court held that the jury could have found from the appellant's actions that this use of the knife was capable of causing bodily injury or death. *Id.* Likewise, the jury could have concluded in the present case that by appellant's use of the knife in holding it to the complainant's neck, threatening her life, and cutting her skirt, it was capable of causing serious bodily injury or death.

■ Next, we must consider the size of the blade. The complainant first testified that she thought the knife was about eight inches long. However, when asked on cross-examination if she was referring to the whole knife or just the blade, she wasn't sure and admitted not knowing much about knives. The fact that there is a discrepancy concerning the size of the knife does not automatically mean that the knife was not a deadly weapon. *See Petrick v. State,* 832 S.W.2d 767, 770 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). Because the other factors are overwhelmingly satisfied, the discrepancy is of little importance.

The third factor to consider is threats made by the accused. The complainant testified that appellant told her he would kill her if she did not comply. She stated that she took him seriously and felt that if she did not do what he told her, he would actually kill her. Furthermore, she said that appellant's passenger had to convince appellant to let her go instead of killing her.

■ Where the victim testifies that he or she was in fear of serious bodily injury or death, a verbal threat by the accused is not required for the jury to conclude that threats were actually made. *See Tisdale,* 686 S.W.2d at 115; *see also Petrick,* 832 S.W.2d at 770. In both *Tisdale,* and *Petrick,* presentment of a knife coupled with fear in the victim was sufficient to constitute a threat by the accused. *See Tisdale,* 686 S.W.2d at 115; *Petrick,* 832 S.W.2d at 770. In this case, appellant verbally threatened the complainant by telling her that he would kill her and she testified that she felt he would do so.

Finally, the physical proximity of the accused and his victim is of importance. In *Tisdale,* the court deemed important the facts that the accused actually came in physical contact with the victim and held the knife within arm's reach of the victim. *Tisdale,* 686 S.W.2d at 115. It is necessary during a sexual assault that the victim and accused be within close proximity of each other. The complainant's testimony indicates that appellant was on top of her and held the knife to her throat throughout the entire assault. She stated he was so close that she could feel and smell his breath.

Although the evidence is made up almost entirely of the complainant's testimony, it is sufficient to support the jury conviction. The jury is fully warranted in concluding from the victim's testimony that the appellant intended to use the knife to cause serious bodily injury or death. *Id.* This court may not sit as a thirteenth juror and reweigh the evidence. *Moreno,* 755 S.W.2d at 867.

In *Petrick,* a case similar to the instant case, the victim testified that the accused pointed the knife upward and "went like that." It was not clear from the record what motion the witness was demonstrating, but the court of appeals explained that the jury was able to see and hear the victim testify. The court held that it should give deference to the verdict and affirmed the conviction. *Id.* at 770. Thus, the jury in the instant case could conclude from the complainant's testimony that the knife existed and that in appellant's intended use, it was capable of causing her serious bodily injury or death. Appellant's third and fourth points of error are overruled.

In appellant's fifth point of error, he argues that the trial court erred in not granting a mistrial when the prosecutor asserted his personal opinion about the case. Appellant specifically points to the following argument by the prosecutor:

The Defense Counsel argues that the State could have DNA testing so they could prove the case beyond any doubt at all. Why? We already knew who did it. She got the license number of his car. We got him through positive identification. Why take the extra step? Why go to the extra

trouble because we know positively that we had the right man.

This argument occurred in the State's rebuttal and came after the following argument by defense counsel:

The State has to fulfill this highest burden of proof that we have in this State and in this Country. It's proof beyond a reasonable doubt. They could have done DNA testing. There could have been blood-typing done. Why haven't they done this? Why didn't they get a Court Order and have blood taken? Why not?

To be proper jury argument, the statements must fall into one of the following categories: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to opposing counsel's argument; or (4) a plea for law enforcement. *Albiar v. State,* 739 S.W.2d 360, 362 (Tex.Crim.App. 1987). If defense counsel invites argument, then it is appropriate for the State to respond. *Id.* In this case, defense counsel not only invited the prosecutor's argument concerning DNA testing, but he asked the question outright. The prosecutor's argument was merely a response to the question asked by defense counsel about why DNA testing had not been done. It was proper for the prosecutor to answer defense counsel's question.

Furthermore, the trial court sustained defense counsel's objection and instructed the jury to disregard that portion of the State's argument. An instruction to disregard improper jury argument is generally sufficient to cure error. *Anderson v. State,* 633 S.W.2d 851, 855 (Tex.Crim.App.1982). We hold that if there was error in the State's argument, the instruction to disregard cured it, thus, appellant's fifth point of error is overruled.

Accordingly, the judgment of the trial court is affirmed.