Francisco PRIETO, Appellant,

v.

The STATE of Texas, Appellee.

No. A14–93–00070–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

June 9, 1994.

Dick Psenda, Houston, for appellant.

Scott A. Durfee, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and MURPHY and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Appellant, Francisco Prieto, appeals his judgment of conviction for Injury to a Child. *See* TEX.PENAL CODE ANN. § 22.04 (Vernon 1989). The jury rejected his plea of not guilty and, after finding the two enhancement paragraphs of the indictment to be true, assessed punishment at life confinement in the Institutional Division of the Texas Department of Criminal Justice. We affirm.

On May 19, 1992, Dr. Joan Shook, a pediatric specialist in emergency medicine at Texas Children's Hospital, treated Trevor Oliver, a two-year old child, for "severe, obvious burns" to his feet and ankles, hands, and behind. Trevor's hands had suffered deep second degree burns, and his feet were similarly injured in a uniform "stocking" burn. Further examination revealed bruising on the inside of Trevor's ears, a small abrasion underneath his right nostril, and bruising that extended down under his left eye.

Trevor's mother, Angelina White, told Dr. Shook that she had learned of the injuries to her child from her boyfriend, appellant, who had been caring for the child while White was out. White said that appellant had told her that Trevor had given himself a bath on that evening and had slipped while getting out of the tub, striking his head on an adjacent toilet.

After examining Trevor, Dr. Shook made a referral to Children's Protective Services (CPS), expressing her concern that Trevor had been abused. Angelina Reese, a CPS case worker, asked appellant over the phone how Trevor had been injured. Appellant told Reese that, at around midnight, he ran some bath water for Trevor and his brother and then went into another room. He thereafter heard a loud scream and a bump and ran back into the bathroom to see Trevor laying on the floor, with peeling skin on his feet and an injury to his eye. He told Reese that Trevor's injuries had not appeared bad to him at that time.

When appellant came to the hospital, he restated this story to Detective Terry Simons. When Simons told him that his story was inconsistent with the physical condition of the child, appellant changed his story:

He stated he had walked earlier that night to where the child's mother was employed at Taco Bell. On the way home that the child had begun to whine. He stated that frequently when the child would leave its mother it would whine and cry. He said that he put his thumb in the child's ear and drug the child home by the ear. That

explained the bruising that was within the center portion of both ears that I questioned him about earlier. He said that once they got home that he had filled the tub with water and that he had picked the child up.

\* \* \* \* \* \*

[W]hen he got home the [child] continued to cry, and he drew water into the tub and threw the [child] into the tub.

\* \* \* \* \* \*

What he said was that he had grabbed the child by the waist, thrown him into the tub, and that when the child went into the water his head had struck the side of the tub and that he landed in the water on his hands and knees.

At trial, Dr. Shook testified that neither of appellant's explanations were consistent with Trevor's physical condition. Instead, Shook stated that the injuries were consistent with being dipped into very hot water. Shook opined that Trevor had to have been held from 20 to 60 seconds in water of at least 130 degrees to generate the burns he suffered.

In addition, John Dickinson, an investigator for the district attorney's office, testified that he filled a similar tub at appellant's apartment complex with 130 degree water and observed that the water was tangibly hot and that steam was rising from it to the ceiling of the bathroom.

Furthermore, Charlotte Alexander, an assistant manager at the apartment complex where appellant lived, testified that on six to eight occasions she observed appellant throw Trevor into the deep end of the complex pool and dunk him under the water. Alexander observed that Trevor was terrified of appellant and the water. When Trevor would cry and try to get out of the pool, appellant would call him "sissy" and "crybaby." When Alexander expressed concern to appellant that he was treating Trevor too roughly, appellant told Alexander that it was none of her business.

Finally, Gwen Alford testified that, while appellant was residing in the apartment next to hers, she often heard him yelling at Trevor and heard cries of pain. She once saw him tell Trevor, "Get your m—f—ing a—in the house or I'm going to beat your g—d—m a—." On two occasions, she observed appellant grab Trevor roughly by the arm and throw him several feet into the house.

Appellant asserts three points of error. First, the trial court committed reversible error in introducing evidence of an extraneous offense or conduct, over appellant's objection. Second and third, the evidence was legally and factually insufficient to support appellant's conviction for intentionally or knowingly causing serious bodily injury to a child, where the evidence fails to show that appellant acted with the requisite culpable mental state.

 In his first point of error, appellant complains that Gwen Alford's testimony concerning appellant's treatment of Trevor on prior occasions should have been excluded because it was immaterial and its probative value was outweighed by its prejudicial effect. The test for admissibility of extraneous offenses requires the determination of two issues:

(1) whether the offense is relevant to a material issue in the case, other than the defendant's character, under Tex. R.Crim.Evid. 404(b); and

(2) whether the probative value of the extraneous offense is substantially outweighed by the danger of unfair prejudice to the defendant under Tex. R.Crim.Evid. 403.

*Montgomery v. State,* 810 S.W.2d 372, 387–88 (Tex.Crim.App.1991) (opinion on reh'g); *Plante v. State,* 692 S.W.2d 487, 491 (Tex. Crim.App.1985). Evidence of an extraneous offense is relevant where, apart from character conformity, it tends to establish some elemental fact, such as intent. *Montgomery,* 810 S.W.2d at 387 (citing Tex.R.Crim.Evid. 404(b)). If relevance is established, the evidence should be admitted absent a further objection under Rule 403. *Id.* at 389. Should such an objection be made, the trial court must determine whether the probative value of the relevant evidence is substantially outweighed by the danger of unfair prejudice to the defendant. *Id.* The trial courts should favor admission in close cases, in keeping with the presumption of admissibili-

ty of relevant evidence. *Id.* The appellate court will not reverse the trial court's decision under this test unless a clear abuse of discretion is shown. *Id.* at 391–92.

First turning to the admissibility of Alford's testimony under Rule 404(b) (relevancy), the record shows that her testimony tended to establish the material element of appellant's intent at the time of the burning. The extraneous offense is relevant if its presence makes appellant's criminal intent more likely than would be assumed in its absence. *Plante,* 692 S.W.2d at 493. In this case, appellant's past abusive treatment of Trevor makes his criminal intent to injure Trevor more likely than without the past abusive treatment. Because appellant had shown a similarly unlawful assaultive intent toward Trevor on prior occasions close in time, it was less likely that he had lawful intent during the charged offense. *See Robinson v. State,* 701 S.W.2d 895, 898 (Tex.Crim.App. 1985); *see also Plante,* 692 S.W.2d at 491–92 (both cases applying the "doctrine of chances" to the relevancy of extraneous evidence). We hold that Alford's testimony was relevant to appellant's intent.

Turning next to the admissibility of the evidence under Rule 403, the Texas Court of Criminal Appeals has listed criteria to be used in determining whether the probative value of evidence is outweighed by its prejudicial effect:

(1) whether the ultimate issue was not seriously contested by the opponent;

(2) whether the State had other convincing evidence to establish the ultimate issue to which the extraneous misconduct was relevant;

(3) whether the probative value of the misconduct evidence was not, either alone or in combination with other evidence, particularly compelling; and

(4) whether the misconduct was of such a nature that a jury instruction to disregard it for any but its proffered purpose would not likely have been efficacious.

*Montgomery,* 810 S.W.2d at 392–93.

The first criteria questions whether the ultimate issue was seriously contested by appellant. In this case, the issue of appellant's intent was the only issue at trial. Prior to trial, appellant made statements absolving himself of criminal intent and later challenged evidence of his intent at trial. In addition, appellant received instructions on the lesser included offenses of reckless and negligent infliction of serious bodily injury to Trevor. Finally, in his summation, defense counsel repeatedly emphasized that appellant did not intend to cause Trevor bodily injury.

The second factor asks whether the State had other convincing evidence on the issue for which the extraneous conduct was admitted, in this case, intent. While Dr. Shook testified that she believed the burns were inconsistent with accidental immersion, the only direct evidence regarding appellant's state of mind was the testimony of Reese (CPS case worker) and Detective Simons concerning appellant's self-serving statements to them. In addition, Trevor was not available to testify as to how he suffered his injuries. Thus, Alford's testimony was necessary to establish appellant's intent.

The third factor concerns whether the probative value of the evidence, either alone or in combination with other evidence, is particularly compelling. Alford's testimony was compelling because it demonstrated appellant's animosity toward Trevor and his willingness to inflict bodily injury upon Trevor. Furthermore, the testimony corroborated the circumstantial conclusions of Dr. Shook and tended to rebut appellant's claim of accident.

The fourth factor involves whether the misconduct was of such a nature that a jury instruction to disregard it for any but its proffered purpose would not likely have been efficacious. Alford's testimony of appellant's rough treatment toward Trevor was not so prejudicial that the jury could not consider it to determine appellant's intent. The actual injuries inflicted on Trevor as a result of this mistreatment on prior occasions were not emphasized; instead, the emphasis was on appellant's state of mind toward Trevor during these incidents.

Under the *Montgomery* factors, we hold that the probative value of Alford's relevant testimony was not outweighed by its prejudicial effect. Because the test for admissibility

of extraneous conduct is met, appellant's first point of error is overruled.

In his second and third points of error, appellant asserts that the evidence was legally and factually insufficient to support appellant's conviction for intentionally or knowingly causing serious bodily injury to a child, where the evidence fails to show that appellant acted with the requisite culpable mental state.

## STANDARD OF REVIEW

*Legal Sufficiency:* The well-established standard for an appellate court to review the sufficiency of the evidence is to determine whether, in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979). The jury, as the trier of fact, is the sole judge of the credibility of the witnesses. *Soto v. State,* 864 S.W.2d 687, 691 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd) (citing *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App. 1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988)). If there is evidence to establish that the defendant is guilty beyond a reasonable doubt, and the trier of fact believes that evidence, the appellate court cannot reverse the judgment on a sufficiency of the evidence ground. *Soto,* 864 S.W.2d at 691 (citing *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988)).

■ *Factual Sufficiency:* Appellant urges us to apply the *Meraz* standard even though he has no burden of proof in this case. *See Meraz v. State,* 785 S.W.2d 146, 154 (Tex. Crim.App.1990). In *Meraz,* the Texas Court of Criminal Appeals wrote:

> [W]hen the courts of appeals are called upon to exercise their fact jurisdiction, that is, examine whether the appellant proved his affirmative defense or other fact issue *where the law has designated that the defendant has the burden of proof by a preponderance of the evidence,* the correct standard of review is whether after considering all the evidence relevant to the issue at hand, the judgment is so against the

> great weight and preponderance of the evidence so as to be manifestly unjust.

*Id.* at 154–55 (emphasis added).

This court has consistently and repeatedly interpreted *Meraz* as applying only to those cases in which the defendant has the burden of proof. *See Reynolds v. State,* 848 S.W.2d 785, 789 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd); *Richard v. State,* 830 S.W.2d 208, 213–14 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd); *Mukes v. State,* 828 S.W.2d 571, 573–74 (Tex.App.—Houston [14th Dist.] 1992, no pet.); *Brown v. State,* 804 S.W.2d 566, 571 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd); *Coleman v. State,* 804 S.W.2d 563, 565 (Tex.App.—Houston [14th Dist.] 1991, no pet.); *Marsh v. State,* 800 S.W.2d 607, 610 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd); *Gaynor v. State,* 788 S.W.2d 95, 97 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd). Appellant asks us to overrule our long line of cases and adopt a rule allowing appellate courts to review the factual sufficiency of evidence on issues where the defendant does *not* have the burden of proof. *See Stone v. State,* 823 S.W.2d 375, 377 (Tex.App.—Austin 1992, pet. ref'd, untimely filed). We respectfully disagree with this interpretation of *Meraz,* as have other courts of appeals. *See Crouch v. State,* 858 S.W.2d 599, 601 (Tex.App.—Fort Worth 1993, pet. ref'd); *Lopez v. State,* 824 S.W.2d 298, 304 (Tex.App.—Houston [1st Dist.] 1992, no pet.); *Borders v. State,* 822 S.W.2d 661, 667–68 (Tex.App.—Dallas 1991), *rev'd on other grounds,* 846 S.W.2d 834 (Tex. Crim.App.1992).

Recently, the Texas Court of Criminal Appeals has refused to address this issue. *See Ex Parte Schuessler,* 846 S.W.2d 850, 852 n. 5 (Tex.Crim.App.1993). The court wrote:

> *Meraz* was specifically directed to a factual sufficiency review involving matters in which the defendant has the burden of proof. A situation that is also present here. We emphasize that we do not express any view here as to whether our holding in *Meraz* is limited to those cases where the defendant has the burden of proof, or whether *Meraz* permits the courts of appeals to engage in a factual

sufficiency review of the elements of an offense.

*Id.* (citations omitted).

■ Although the court of criminal appeals "do[es] not express any view" on this issue, we are bound by our own precedent cited above. Therefore, until the court of criminal appeals speaks to the issue, we hold that the standard set out in *Meraz* applies only where the defendant has the burden of proof and that the only standard to be applied otherwise when reviewing the sufficiency of the evidence is the standard set out in *Jackson.* However, in light of the dicta in *Ex Parte Schuessler,* we will also review the evidence under the *Meraz* standard.

## APPLICATION OF THE LAW TO THE FACTS

The trial court charged the jury as follows, in relevant part:

Now, if you believe from the evidence beyond a reasonable doubt that the defendant, Francisco Prieto, in Harris County, Texas, on or about the 19th day of May, 1992, did then and there unlawfully intentionally or knowingly cause serious bodily injury to Trevor Oliver, a child younger than fifteen years of age, by immersing Trevor Oliver in hot water, then you will find the defendant guilty of intentionally or knowingly causing serious bodily injury to a child younger than fifteen years of age, as charged in the indictment.

This charge tracked the applicable statue and the indictment. *See* TEX.PENAL CODE ANN. § 22.04(a)(1) (Vernon 1989).

The evidence in support of the jury's finding of guilt is as follows:

1) Appellant's admission to Detective Simons that the child was whining and crying, so he dragged Trevor into the apartment by inserting his thumb into the child's ear.

2) Detective Simons' testimony that upon informing appellant that his explanation of Trevor's injuries (slipped and hit head on toilet) was inconsistent with the type of injuries, appellant changed his story (he picked up Trevor and "threw" him into the bathtub).

3) Dr. Shook's testimony that neither of appellant's explanations could have caused Trevor's injuries.

4) Dr. Shook's testimony that the burns inflicted on Trevor were of such a nature that they could not have been accidental, but were instead consistent with an intentional dipping of Trevor into hot water for at least 20 to 60 seconds.

5) Dr. Shook's testimony that the injury to the inner ear could not have been caused by an impact on the outside of the ear.

6) Dr. Shook's testimony that the degree of injury sustained by Trevor was not possible from immersion in water cooler than 130 degrees.

7) John Dickinson's testimony concerning his observation that water heated to 130 degrees in a bathtub similar to appellant's was tangibly and visibly hot, thus precluding a claim that appellant did not realize the water was scalding.

8) The testimony of Gwen Alford and Charlotte Alexander of appellant's past abusive treatment of Trevor.

The defense did not present any witnesses at trial. In reviewing the evidence under the *Jackson* standard, we hold that, in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of Injury to a Child beyond a reasonable doubt. *See Jackson,* 443 U.S. at 318–19, 99 S.Ct. at 2788–89; *see also* TEX.PENAL CODE ANN. § 22.04(a)(1) (Vernon 1989). Additionally, under the *Meraz* standard, after considering all of the evidence relevant to the issue at hand, we hold that the judgment is not so against the great weight and preponderance of the evidence so as to be manifestly unjust. *See Meraz,* 785 S.W.2d at 154–55. Thus, the evidence is both legally and factually sufficient to support the conviction. Appellant's second and third points of error are overruled.

Accordingly, the judgment of the trial court is affirmed.