Affirmed and Memorandum Opinion filed March 1, 2007








Affirmed and Memorandum Opinion filed March 1, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00329-CR

NO. 14-05-00330-CR

____________

 

ANTHONY LYNN JACKSON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 228th
District Court

Harris County, Texas

Trial Court Cause Nos. 984150
& 1010800

 



 

M E M O R A N D U M   O P
I N I O N








Appellant Anthony Lynn Jackson was charged with arson and
murder.  He pleaded guilty to the arson charge and a jury convicted him of
murder.  On appeal, Jackson challenges the effectiveness of his counsel at
every stage of the proceedings and argues that the trial court violated his
right to compulsory process by accepting and entering judgment on his plea of
guilty to the arson charge.  He also contends the evidence is legally and
factually insufficient to support a finding that he strangled or smothered
Priscilla Viehland or otherwise caused her death.

As to Jackson=s issues relating
to the arson charge, we conclude that Jackson failed to establish  he was
denied his right to effective assistance of counsel or compulsory process. 
Concerning the murder charge, we conclude  the evidence is legally and
factually sufficient to support the jury=s verdict, and 
Jackson has failed to establish his defense counsel was ineffective.  We therefore
affirm both convictions.

I.  Factual and Procedural Background

According to the
testimony presented at trial, on the afternoon of October 20, 2003, Bernardo
Ramirez saw a tall, black male wearing a shirt with a Chili=s restaurant logo
leaving apartment 3188, which was two doors away from Ramirez=s apartment. 
Ramirez testified that he heard the man say Asmoke.@ A few minutes
later, Ramirez stated he saw smoke coming from under the door to apartment
3188.  He immediately notified the apartment complex=s management.

Sebastian Robles,
a maintenance worker, was the first employee of the apartment complex to arrive
at apartment 3188 after Ramirez reported the smoke.  Robles testified that the
apartment door was locked, and he had to break a window to enter.  The fire had
not spread beyond the apartment=s only bedroom, but Robles saw little else
because the smoke was very thick.  Using two fire extinguishers, Robles
extinguished the fire just as firefighters arrived.  As the smoke cleared in
the apartment bedroom, Priscilla Viehland=s body was found
on a partially charred air mattress with a pillow over her head.








Juan Melchor, an
arson investigator with the Houston Fire Department, spoke with  Bernardo Ramirez
about the person Ramirez had seen near Viehland=s apartment
earlier that day.  Melchor testified that when he subsequently learned a person
matching the description given by Ramirez had been reported at a nearby
hospital, he drove Ramirez there, and Ramirez confirmed that Anthony Lynn
Jackson, the person in the hospital, was the same man he had seen exiting
Viehland=s apartment
minutes before noticing the smoke. 

Dr. Stephen Wilson
of the Harris County Medical Examiner=s Office testified
regarding the results of the autopsy performed on Viehland=s body.  He stated
that although Viehland=s body was charred along the back and
right side, there was no soot in Viehland=s airways, and her
blood contained a relatively low amount of carboxyhemoglobin.[1] 
Dr. Wilson explained that these findings indicated that fire was not the cause
of Viehland=s death, and she instead died from asphyxia due to
strangulation.  He explained that Viehland=s face and eyes
had petechial hemorrhages, which are congested and
ruptured capillaries due to obstruction of the venous system.  He also
described contusions on her chest wall, subscalp, left arm, and left hand, and
two faint parallel horizontal lines, three-eighths of an inch apart, on the
front of her neck.  Dr. Wilson testified these marks strongly suggested that
Viehland=s neck had been
compressed by a ligature rather than manually.  He further explained that the
muscles immediately below the skin of Viehland=s neck had
hemorrhaged, and that this finding is consistent with either manual or ligature
compression.  According to Dr. Wilson, no bones in Viehland=s neck were
fractured, although such fractures are occasionally seen in ligature, as
opposed to manual, strangulation.  Finally, analysis of the material recovered
from under Viehland=s fingernails revealed only her own DNA.








Dominick Ferrara,
the manager at the Chili=s restaurant where both Jackson and
Viehland worked, testified that Jackson and Viehland had dated but had ended
their relationship approximately two months before Viehland=s death. 
According to Ferrara, Jackson was scheduled to start work at 10:45 a.m. on the
day of Viehland=s death, but instead called Ferrarra at
the start of his scheduled shift and said he was running late and would be
there in twenty minutes.  However, Jackson did not come to work that day, but
instead called Ferrara at 2:00 p.m. and reported that he was at a hospital.[2] 
Arson investigators called Ferrara approximately thirty minutes later, and
Ferrara gave them this information.

Sergeant G.J.
Novak of the Houston Police Department testified that he and his partner
questioned Jackson at the hospital on October 20, 2003.  According to Sergeant
Novak, Jackson initially told him that he had last seen Viehland when he left
her apartment at 5:00 a.m. that morning.  However, Jackson subsequently stated
that he had been in Viehland=s apartment hours later.  In another
interview the next day with Investigator Robert Kent, Jackson stated that he
had found Viehland=s corpse in her apartment and set it on
fire using fingernail polish remover. 

Jackson
consented to a search of his apartment, and Investigator Thomas Wood
participated in the search of Jackson=s and
Viehland=s apartments.  According to his testimony at trial,
investigators found clothing in Jackson=s
apartment that matched Ramirez=s
description of the clothing worn by the man he saw leaving Viehland=s apartment.  In Jackson=s
home, they also found a nine-volt battery, matches, a key to Viehland=s apartment, a paper towel that smelled like solvent, and
an undated note written by Viehland and addressed to Jackson.  In the note,
Viehland told Jackson, AWe are
not together because I don=t want
to be with you anymore,@ and
concluded, AI do love you Anthony, but
enough to let you go completely.  I=m
sorry but this is it.@  Wood
further testified that the smoke detector in Viehland=s apartment was functional, but its battery was missing. 
The battery found in Jackson=s
apartment was the same brand and type as those provided to tenants by Viehland=s apartment complex management to power their smoke
detectors.  








According
to Wood, there was nothing in Viehland=s
apartment to suggest that the fire was accidental.  To the contrary, he
explained that there was a circular Apour
pattern@ on the carpet of the bedroom where Viehland=s body was found, and a dog trained to detect flammable
substances signaled that such a substance was present in this area.  Wood
further testified that he found a bottle of nail polish remover under the sink
in Viehland=s apartment, and fingerprints
taken from that bottle matched Jackson=s.

Keith
Gray, Jackson=s cell-mate for a brief
period, testified that Jackson admitted setting the fire.  According to Gray,
Jackson told him that he had argued with Viehland  because she received and
responded to a text message from another man while she was  intimate with Jackson. 
Gray further testified that Jackson said he left the apartment at about 4:00
a.m. but returned on his way to work, showered, realized Viehland was dead, and
started the fire.  Gray also testified that when Jackson spoke of Viehland, he
said, A>I didn=t mean to kill her,=@ and A>I didn=t mean
to hurt her=@. 

After
Jackson pleaded guilty to the arson charge and not guilty to the murder charge,
a jury found him guilty of murder as charged and the trial court assessed
punishment at life imprisonment.  Jackson then filed a motion for new trial
contending that he had received ineffective assistance of counsel.  At the
hearing on the motion, Jackson testified that his trial counsel did not contact
potential witnesses whose names and phone numbers Jackson provided to him; did
not introduce letters from Viehland indicating they had a good relationship;
and did not ask Jackson about his mental health history, physical limitations,
or military experience.  Jackson also testified that his trial counsel
incorrectly advised him that pleading guilty to the arson charge would ensure
that the offense would not be mentioned during the murder trial.  Jackson=s trial counsel, Steve Baxley, did not testify at the
hearing on the motion for new trial but submitted an affidavit.  In his
affidavit, Baxley stated that he was informed of only one potential witness and
was given letters from Viehland that were of little value because they were
undated.  He further stated he chose not to raise Jackson=s other possible defenses  because the defensive theories
were flawed and could harm Jackson=s
case.  Finally, Baxley stated that he never told Jackson that pleading guilty
to the arson charge would ensure that it was not mentioned during the murder
trial.  The trial court denied the motion for new trial and this consolidated
appeal ensued.








II.  Issues
Presented

Jackson
presents six issues relating to the arson charge.  In his first and second
issues, Jackson contends the trial court erred in failing to grant his motion
for new trial based on ineffective assistance of counsel at the guilt/innocence
and punishment phases of his trial.[3]  In his third
through sixth issues, Jackson claims the trial court violated his Federal and
State Constitutional rights to compulsory process by accepting and entering
judgment on his guilty plea.

Jackson
challenges his murder conviction and sentence in an additional eight issues. 
In his first two issues, Jackson contends that he received ineffective
assistance of counsel during the guilt/innocence and punishment phases of his
trial.  In his third through eighth issues, Jackson argues that the evidence is
legally and factually insufficient to support his conviction for murder because
the State failed to prove that Jackson caused Viehland=s death by strangling her, smothering her, or by any other
method.

III.  Analysis

A.      Claims of Ineffective Assistance of Counsel








We
review claims of ineffective assistance of counsel under the standard set forth
in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d
674 (1984).  Under the Strickland test, an appellant must prove (1) his
trial counsel=s representation was
deficient, and (2) the deficient performance was so serious that it deprived
the appellant of a fair trial.  Id. at 687, 104 S. Ct. at 2064.  To
establish both prongs, the appellant must prove by a preponderance of
the evidence that counsel=s
representation fell below the objective standard of prevailing professional
norms, and there is a reasonable probability that, but for counsel=s deficiency, the result of the proceeding would have been
different.  Id. at  690B94,
104 S. Ct. at 2066B68. 
An appellant=s failure to satisfy one prong
makes it unnecessary for a court to consider the other prong.  Id. at
697, 104 S. Ct. at 2069.  This test is applied to claims arising under the
Texas Constitution as well as those arising under the United States
Constitution.  Hernandez v. State, 726 S.W.2d 53, 56B57 (Tex. Crim. App. 1986).

Claims
of ineffective assistance of counsel are commonly raised in a motion for new
trial, as Jackson has done here.  In reviewing the trial court=s denial of the motion, we apply an Aabuse of discretion@
standard.  Holden v. State, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006)
(en banc).  A trial court abuses its discretion if its decision is arbitrary or
unreasonable.  Id.  In reviewing the ruling, we do not substitute our
judgment for that of the trial court.  Id.  We view the evidence in the
light most favorable to the trial court=s
ruling and presume that all reasonable factual findings supported by the record
were made against the losing party.  See Charles v. State, 146
S.W.3d 204, 208 (Tex. Crim. App. 2004).  Thus, we will conclude that a trial
court abused its discretion in denying a motion for new trial only when no
reasonable view of the record could support the trial court=s ruling.  Id.

1.       Arson Plea

In his
first issue challenging his arson conviction, Jackson argues that he received
ineffective assistance of counsel because his defense attorney incorrectly
advised him that pleading guilty to the arson charge would ensure that this
charge was not mentioned during the murder trial.  In response to Jackson=s motion for new trial, his defense counsel submitted an
affidavit denying that he made such a representation.  Counsel=s affidavit was contradicted by Jackson=s live testimony.  Thus, the issue became one of
credibility.  








Here,
the trial court had the opportunity to evaluate Jackson=s demeanor during the hearing, and was familiar with both
Jackson and his trial counsel through their prior appearances in court. 
Because the same judge who decided Jackson=s
motion for new trial also presided over the murder trial, the trial court also
knew the history and facts of the case.  See Holden, 201 S.W.3d at 764. 
The trial court therefore had sufficient evidence to determine whether Jackson
or his counsel was more credible, and we will defer to this determination.  See
id.  Consequently, we cannot conclude that no reasonable view of the record
could support the trial court=s
ruling.  We therefore overrule Jackson=s
first issue challenging his arson conviction.

2.       Murder Trial

Jackson
also contends that his trial counsel was ineffective at the guilt/innocence
phase of his murder trial because his attorney did not (a) visit Jackson in
jail after the case was set for trial, (b) hire an investigator, (c) introduce
letters into evidence indicating that Jackson and Viehland had a good
relationship, (d) introduce evidence that Jackson had served in the military,
and (e) introduce evidence that Jackson was physically incapable of strangling
or smothering Viehland due to a preexisting shoulder injury.  

Jackson=s defense counsel rebutted each of these allegations in his
affidavit.  He stated that, in addition to conversations they had in the
courthouse, he visited Jackson in jail at least five times prior to trial.  He
also stated that he had consulted a DNA expert before learning the results of
the State=s DNA tests; however, the
State=s tests did not incriminate Jackson.  The attorney also
explained that he did not offer Viehland=s
letters because the few that were dated were too remote in time to be useful. 
Moreover, he expressed concern that the prosecution would use the letters to
buttress its theory that Jackson was infatuated with Viehland.  Jackson=s defense counsel also explained that he did not mention
Jackson=s military record because Jackson did not receive an
honorable discharge but instead received a general discharge under
circumstances he refused to explain.  Finally, Jackson=s defense counsel stated that he did not mention Jackson=s shoulder injury or argue that Jackson was physically
incapable of strangling Viehland because doing so would have allowed the State
to rebut this argument by introducing evidence that Jackson had assaulted his
estranged wife and his wife=s
boyfriend.  








In
sum, the record shows that the challenged actions by Jackson=s trial counsel were Astrategic
choices made after thorough investigation of law and facts relevant to
plausible options@ and
are therefore Avirtually unchallengeable.@   Strickland, 466 U.S. at 690B91, 104 S. Ct. at 2066.  Because Jackson has failed to
establish that his attorney=s
representation fell below professional standards, we overrrule his first issue
challenging his murder conviction.

3.  Combined Punishment Trial for Arson and
Murder

Jackson
argues that he received ineffective assistance at the combined punishment phase
of his trial because his attorney did not call as witnesses some of the people
Jackson claimed would have testified favorably on his behalf.   In response,
Jackson=s trial counsel stated in his affidavit that when he asked
Jackson=s family to give him the names of possible character
witnesses, they only gave him the name of a preacher who said he would pray for
Jackson.  The attorney also stated that he spoke with other potential character
witnesses, such as Jackson=s
estranged wife and his mother, but decided that their testimony might damage
Jackson=s case.  For example, Jackson=s
defense counsel stated that he decided not to call Jackson=s mother at the punishment phase of trial because he was
concerned that Jackson may have confessed to her.  He did not call Jackson=s wife because doing so could permit the State to question
her about past physical abuse by Jackson.  

Here,
too, Jackson has failed to overcome the presumption that his attorney acted in
accordance with sound trial strategy.  See id. at 691, 104 S. Ct. at
2066 (A[W]hen a defendant has given counsel reason to believe that
pursuing certain investigations would be fruitless or even harmful, counsel=s failure to pursue those investigations may not later be
challenged as unreasonable.@).  We
therefore overrule Jackson=s
second issue challenging the punishment assessed in both convictions.

B.      Claims of Denial of the Right to Compulsory Process


In his
third and fourth issues relating to his arson charge, Jackson contends the
trial court violated his rights to compulsory process under the Texas and
United States Constitutions by accepting his guilty plea pursuant to article
1.15 of the Texas Code of Criminal Procedure.  In his fifth and sixth issues,
he argues that the trial court committed similar violations by entering a
judgment of guilt under the same statute.  

The
portion of the statute relevant to this case is as follows:








No person can be convicted of a felony except
upon the verdict of a jury duly rendered and recorded, unless the defendant,
upon entering a plea, has in open court in person waived his right of trial by
jury in writing in accordance with Articles 1.13 and 1.14; provided, however,
that it shall be necessary for the [S]tate to introduce evidence into the
record showing the guilt of the defendant and said evidence shall be accepted
by the court as the basis for its judgment and in no event shall a person
charged be convicted upon his plea without sufficient evidence to support the
same. 

 

Texas Code Crim. Proc. Ann. art.
1.15 (Vernon 2005).[4]  Jackson contends
that by accepting his guilty plea and entering judgment pursuant to this
portion of the statute, the trial court violated his rights to compulsory
process[5] because this
provision requires the State to present evidence, but does not allow the
defendant to do so.  But the record does not show that Jackson attempted to
offer evidence at the hearing on his plea of guilty, that he was prevented from
doing so, that he objected to his alleged inability to present evidence, or
that he made an offer of proof.  See Tex.
R. Evid. 103(a)(2); Coleman v. State, 966 S.W.2d 525, 527B28 (Tex. Crim. App. 1998) (en banc) (ATo exercise the federal constitutional compulsory process
right, the defendant must make a plausible showing to the trial court, by sworn
evidence or agreed facts, that the witness=
testimony would be both material and favorable to the defense.@).  Thus, the alleged error arguably is not properly
preserved for review.













However,
assuming that error was preserved, arguments substantially similar to those
presented by Jackson have been  presented to and rejected by this court and our
sister court, the First Court of Appeals.  See Lyles v. State, 745
S.W.2d 567, 568 (Tex. App.CHouston
[1st Dist.] 1988, pet. ref=d);
Vanderburg v. State, 681 S.W.2d 713, 717B18
(Tex. App.CHouston [14th Dist.] 1984,
pet. ref=d).  We have consistently followed these precedents in a
host of unpublished cases.[6]  As we have
stated, article 1.15 is simply an additional procedural safeguard, not required
under federal constitutional law, that a defendant will not be convicted on
insufficient evidence even if he pleads guilty.  See Vanderburg, 681
S.W.2d at 718.  Nothing in article 1.15 prohibits the trial court from
considering evidence offered by the defendant or requires the court to accept
the State=s evidence as sufficient proof
of guilt.  Id.  Moreover, a defendant is not required to expressly waive
his right to compulsory process before the trial court can proceed to judgment
on his plea of guilty.  Id. at 717.  Jackson=s arguments to the contrary rely solely on cases that
predate the Vanderburg line of cases and do not attempt to distinguish
them, but as a prior decision of this court, Vanderburg is controlling
authority.[7] Accordingly, for
the reasons expressed in Vanderburg and Lyles, we overrule
Jackson=s third, fourth, fifth, and sixth issues pertaining to his
arson conviction.

C.      Legal Sufficiency of
the Evidence to Support the Murder Conviction

In his
third, fifth, and seventh issues relating to his murder conviction, Jackson
challenges the legal sufficiency of the evidence to show that he caused
Viehland=s death, or that he strangled or smothered her.  When reviewing
the legal sufficiency of the evidence, we do not ask whether we believe the
evidence at trial established guilt beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 318B19, 99
S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979).  Rather, we examine the evidence in
the light most favorable to the verdict to determine whether any rational trier
of fact could have found the essential elements of the offense beyond a
reasonable doubt.  Id. at 443 U.S. at 319, 99 S. Ct. at 2789; Mason
v. State, 905 S.W.2d 570, 574 (Tex. Crim. App. 1995) (en banc).

A
person commits murder if he intentionally or knowingly causes the death of an
individual. Tex. Penal Code Ann. _
19.02(b)(1) (Vernon 2003).  A person also commits murder if he intends to cause
serious bodily injury and commits an act clearly dangerous to human life that
causes the death of an individual.  Id. _
19.02(b)(2).  When an indictment alleges multiple means of committing an
offense, the State is required to prove only one of the alleged means in order
to support  the conviction.  Eastep v. State, 941 S.W.2d 130, 133 (Tex.
Crim. App. 1997) (en banc), overruled in part on other grounds by Riney v.
State, 28 S.W.3d 561, 565 (Tex. Crim. App. 2000) and Gollihar v. State,
46 S.W.3d 243, 256B57
(Tex. Crim. App. 2001).  Thus, we must affirm  Jackson=s murder conviction if the State presented legally
sufficient evidence to prove that he strangled or smothered Viehland.








 After
reviewing the evidence in the light most favorable to the verdict, we conclude
there is sufficient evidence for a jury to find that Jackson caused Viehland=s death by one of the methods alleged in the indictment. 
Bernardo Ramirez=s
testimony that he saw Jackson leaving Viehland=s
apartment shortly before her body was discovered is one factor from which a
rational jury could infer guilt.  See Powell v. State, 194 S.W.3d 503,
507 (Tex. Crim. App. 2006) (considering evidence that the appellant was seen at
crime scene and hastily leaving it as part of the Atotality of the evidence@ from
which a jury could infer guilt). Jackson also made inconsistent statements
about when he had last been at Viehland=s
apartment, and these statements were played for the jury.  This too may be
considered by a jury as evidence of guilt.  See Prieto v. State, 879
S.W.2d 295, 300 (Tex. App.CHouston
[14th Dist.] 1994, pet. ref=d)
(considering the appellant=s
changing versions of events as evidence supporting the jury=s finding of guilt).  The jury also heard the testimony of
Keith Gray, who stated that Jackson told him he argued with Viehland about her
contact with another man, and told Gray he Adidn=t mean to kill her.@  See
Lopez v. State, 200 S.W.3d 246, 251 (Tex. App.CHouston [14th Dist.] 2006,  pet. ref=d) (AEvidence
showing motive to commit murder is a significant circumstance indicating
guilt . . . .@). 
Perhaps most compelling, Jackson admitted that he set Viehland=s body on fire.  See Guevara v. State, 152 S.W.3d
45, 50 (Tex. Crim. App. 2004) (AAttempts
to conceal incriminating evidence, inconsistent statements, and implausible
explanations to the police are probative of wrongful conduct and are also
circumstances of guilt.@). 
From the foregoing evidence, a rational jury could find that Jackson
intentionally or knowingly caused Viehland=s
death. 

The
evidence is also sufficient to support a jury=s
finding that Jackson killed Viehland by strangling or smothering her. At trial,
Dr. Wilson testified that asphyxia due to strangulation was the cause of death,
and that there were two parallel lines on Viehland=s neck, consistent with strangulation by a ligature. 
Pictures of these lines were shown to the jury.  Dr. Wilson also testified that
the muscles immediately below the skin of Viehland=s neck had hemorrhaged, which is consistent with both
manual or ligature compression.  Finally, Viehland was found with a pillow over
her head.

Examining
the evidence in the light most favorable to the verdict, we conclude that a
reasonable jury could have found that Jackson intentionally and knowingly
caused Viehland=s
death by manual or ligature strangulation or by smothering her.  We therefore
overrule Jackson=s
third, fifth, and seventh issues relating to his murder conviction. 








D.      Factual Sufficiency of
the Evidence to Support the Murder Conviction

In his
fourth, sixth, and eighth issues relating to his murder conviction, Jackson
challenges the factual sufficiency of the evidence to show that he strangled
Viehland, smothered her, or otherwise caused her death.  As previously
discussed, the State was required to prove only one of the alleged means in
order to support the conviction. Eastep, 941 S.W.3d at 133.  Thus, we
must affirm Jackson=s
murder conviction if the State presented factually sufficient evidence to prove
that Jackson killed Viehland by strangling or smothering her. 

When
reviewing the factual sufficiency of the evidence, we view all the evidence in
a neutral light and set aside the verdict Aonly
if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust.@ Cain
v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997) (en banc) (quoting Clewis
v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996) (en banc)).  Before we
may reverse for factual insufficiency, we must first be able to say, with some
objective basis in the record, that the great weight and preponderance of the
evidence contradicts the jury=s
verdict.  Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). 
When reviewing the evidence, we must avoid intruding on the factfinder=s role as the sole judge of the weight and credibility of
the witness testimony.  Johnson v. State, 23 S.W.3d 1, 9 (Tex. Crim.
App. 2000) (en banc).  We do not re-evaluate the credibility of witnesses or
the weight of evidence, and will not substitute our judgment for that of the
factfinder.  Johnson v. State, 967 S.W.2d 410, 412 (Tex. Crim. App.
1998).  Finally, we must discuss the most important and relevant evidence that
supports the appellant=s
appeal.  Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). 








In his
brief, Jackson argues that there was no evidence he had scratches on his body
or showed any other signs he had been in an altercation.  Although this
argument presumes that Jackson could not have killed Viehland without sustaining
even a slight visible injury, Jackson cites no authority or evidence supporting
such a presumption.  Moreover, the State was required to prove only that
Jackson committed the elements of the offense as charged; conviction for the
offense of murder does not require that, in the course of killing his victim,
the offender engage in an altercation that leaves detectable signs.  See Tex. Penal Code Ann. _
19.02(b)(1) (Vernon 2003).  

Jackson
also complains that the time of Viehland=s
death was never determined, but the indictment for murder alleges only that the
offense occurred on or about October 20, 2003.  Viehland=s sister, Leslie, testified that she last saw Viehland at
approximately 11:30 p.m. on October 19, 2003, and that the two later spoke by
telephone.  Because Viehland=s body
was found on the afternoon of October 20, 2003, there was sufficient evidence for
the jury to find that Viehland was murdered on the date alleged in the
indictment.  See also Garcia v. State, 981 S.W.2d 683, 685B86 (Tex. Crim. App. 1998) (en banc) (explaining that an
indictment need not allege the precise date the offense occurred).  

Jackson
additionally contends that Keith Gray=s
testimony is not credible.  However, we will not substitute our judgment of
witness credibility for the jury=s
determination.  Johnson, 23 S.W.3d at 9.  Moreover, Gray=s testimony was not essential to the prosecution; the jury
could disbelieve Gray=s
testimony and still find factually sufficient evidence on which to convict
Jackson of Viehland=s
murder.








Jackson
next alleges the evidence is factually insufficient to support his murder
conviction because no murder weapon was found on his person or in his
apartment, and no DNA evidence links him to the crime.  As we have previously
stated, however, factually sufficient evidence does not necessarily include
such physical evidence.  See Harmon v. State, 167 S.W.3d 610, 614 (Tex.
App.CHouston [14th Dist.] 2005, pet. ref=d) (holding the evidence legally and factually sufficient
to uphold an appellant=s
aggravated robbery conviction Awithout
DNA evidence, fingerprint evidence, or evidence of the gun or
cash . . . .@). 
Moreover, the indictment alleged that Jackson caused Viehland=s death by strangling or smothering her; when her body was
found, Viehland had a pillow over her head, and her body was partially
charred.  From this evidence, the jury could have found that Jackson strangled
Viehland with his hands, strangled her with a ligature that was consumed in the
fire, or smothered her with the pillow found at the scene.  In each of these
scenarios, there would be no distinct murder weapon in Jackson=s possession.  Moreover, each could be accomplished without
leaving DNA evidence at the scene.         

 Viewing
the evidence in a neutral light, we conclude that the jury=s verdict is not contrary to the great weight and preponderance
of the evidence.  Accordingly, we overrule Jackson=s fourth, sixth, and eighth issues relating to his murder
conviction.

IV.  Conclusion

We
hold Jackson has failed to show that his defense counsel rendered ineffective
assistance at any phase of trial; thus, the trial court did not abuse its
discretion in denying Jackson=s
motion for new trial.  In accordance with Vanderburg and its progeny, we
further hold that the trial court did not err in accepting and entering Jackson=s guilty plea or in proceeding to judgment and sentencing
on the arson charge.  Finally, we hold that the evidence is legally and
factually sufficient to support Jackson=s
murder conviction.  Accordingly, we affirm the trial court=s judgment.

 

 

 

 

/s/      Eva M. Guzman

Justice

 

 

 

 

Judgment
rendered and Memorandum Opinion filed March 1, 2007.

Panel
consists of Justices Anderson, Hudson, and Guzman.

Do Not
Publish C Tex. R. App. P.
47.2(b).









[1]  Carboxyhemoglobin is a compound formed in the blood
when a person inhales carbon monoxide.  Dr. Wilson testified that when fire
causes death, this compound will comprise about 30% of a person=s blood, but formed only 5% of Viehland=s blood.





[2]  Jackson complained of chest pains.





[3]  Although Jackson claims he received ineffective
assistance of counsel during his Abench
trial@ for arson, there was no trial on that charge because
he pleaded guilty to the offense.  We therefore construe his brief to challenge
the actions of his trial counsel that led to that guilty plea.





[4]  Jackson waived his right to trial by jury as
provided in the statute.





[5]  This right is found in the Sixth Amendment to the
U.S. Constitution, which reads in relevant part AIn all criminal prosecutions, the accused shall enjoy the right . . .
to have compulsory process for obtaining witnesses in his favor.@ U.S. Const.
amend. VI.  The right to offer the testimony of witnesses and compel their
attendance at trial if necessary is a fundamental element of due process.  Washington
v. Texas, 388 U.S. 14, 19, 87 S. Ct. 1920, 1923, 18 L. Ed. 2d 1019 (1967). 
The Texas Constitution similarly states, AIn
all criminal prosecutions the accused shall . . . have compulsory process for
obtaining witnesses in his favor, except that when the witness resides out of
the State and the offense charged is a violation of any of the anti-trust laws
of this State . . . .@ Tex. Const. art.
I, _ 10.  Thus, with an exception that is not relevant to
this case, the language of the Texas Constitution mirrors the language of the
United States Constitution on the issue of compulsory process.





[6]  See, e.g., Jones v. State, No.
14-04-00154-CR, 2005 WL 232272, at *2 (Tex. App.CHouston [14th Dist.] July 27, 2005, pet. ref=d) (mem. op., not designated for publication); Freeman
v. State, Nos. 14-02-00616-CR & 14-02-00617-CR, 2003 WL 1922644, at *1
(Tex. App.CHouston [14th Dist.] April 24, 2003, pet. ref=d) (mem. op., not designated for publication); Wright
v. State, 14-99-00956-CR, 2000 WL 489411, at *1 (Tex. App.CHouston [14th Dist.] April 27, 2000, no pet.) (not
designated for publication); Schlemeyer v. State, Nos. 14-98-00248-CR
& 14-98-00291-CR, 2000 WL 378047, at *3B4
(Tex. App.CHouston [14th Dist.] April 13, 2000, pet. ref=d) (not designated for publication); Crockett v.
State, No. 14-99-00203-CR, 2000 WL 328399, at *1B2 (Tex. App.CHouston
[14th Dist.] March 23, 2000, pet. ref=d)
(mem. op., not designated for publication); Santana v. State, Nos.
14-97-01074-CR & 14-97-01075-CR, 1999 WL 1080968, at *1B2 (Tex. App.CHouston
[14th Dist.] Dec. 2, 1999, pet. ref=d)
(not designated for publication); Beals v. State, No. 14-97-00689-CR,
1999 WL 516118, at *1 (Tex. App.CHouston
[14th Dist.] July 22, 1999, pet. ref=d)
(not designated for publication); Luke v. State, No. 14-93-00558-CR,
1995 WL 504834, at *1B2 (Tex. App.CHouston
[14th Dist.] Aug. 24, 1995, pet. ref=d).





[7]  As the Court of Criminal Appeals stated, AWe recognize that the doctrine of stare decisis
should generally be followed, because it promotes judicial efficiency and
consistency, it fosters reliance on judicial decisions, and contributes to the
actual and perceived integrity of the judicial process.@  Riney v. State, 28 S.W.3d 561, 565 (Tex.
Crim. App. 2000).