

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-14-00236-CR

JERRY SHAD ROBBINS                                                        APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

----------

FROM THE 43RD DISTRICT COURT OF PARKER COUNTY
TRIAL COURT NO. CR13-0283

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

A jury convicted Appellant Jerry Shad Robbins of burglary of a habitation. *See* Tex. Penal Code Ann. § 30.02 (West 2011). The trial court sentenced Robbins to eighteen years' imprisonment. In four issues, Robbins complains of the denial of his motion to suppress, the admission of extraneous offense

---

[1]*See* Tex. R. App. P. 47.4.

evidence, the sufficiency of the evidence, and the State's closing argument. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Annette Ramon lived at 620 Sunset Drive in Azle, Texas. Sunset Drive is a dead-end street, and Ramon's house is located at the end of the street where it dead ends. Ramon was home alone on the afternoon of March 1, 2013, when she heard a vehicle pull into her driveway. She looked out the window and saw a black truck in her driveway; she had seen the truck in her neighborhood the previous day but did not otherwise recognize it or the driver. The driver, an older man wearing dark clothing and a baseball hat, got out and walked up to the front door. He tried "jiggling the handle" without knocking or ringing the doorbell. The man walked back to his truck and then walked around to the backyard. Ramon called 911. Ramon gave the dispatcher a description of the man and his truck and explained what he was doing.

While on the phone with the 911 dispatcher, Ramon watched out her bathroom window as the man walked around the backyard a while, then returned to his truck and got a fence-post driver out of the bed of the truck. He walked up to the front door, opened the glass storm door, and began hitting the front door's handle with the fence-post driver. Ramon ran to her bedroom and hid until officers arrived.

Azle Police Officer Zach Graves responded to the 911 dispatch call. Officer Graves arrived at Ramon's house within two or three minutes. As Officer

2

Graves drove up, he saw a black truck driving down Sunset Drive away from Ramon's house. Officer Graves made a u-turn in Ramon's driveway and stopped the truck 200 yards from Ramon's house. The driver, Robbins, matched the description of the suspect. Robbins told Officer Graves that he was coming from his bookkeeper's house at 616 Sunset Drive. Ramon's house is next door to 616 Sunset Drive.

Officers Richard Lukowsky and Eric Sheid arrived on the scene just as Officer Graves stopped Robbins's truck. Officer Lukowsky looked into the bed of Robbins's truck and noticed a fence-post driver in plain view. Officer Graves called Robbins's license into dispatch and discovered that there was a warrant for his arrest for a burglary of a habitation in Tarrant County. Officer Graves arrested Robbins.

Officers subsequently searched Robbins's truck and found a club, an axe, a hat with fake hair attached, two pairs of black gloves, a police scanner, a door knob with related assembly materials, six license plates, a pair of handcuffs, a stun gun, three garage door openers, and various bullets. Officers determined that two of the license plates in Robbins's vehicle were registered to a camper trailer and a boat trailer belonging to Ramon's next door neighbor, Renee Mitchell. Mitchell had worked for Robbins in the past, and the two were friends; she did not know that the license plates had been taken.

### III. MOTION TO SUPPRESS

In his first issue, Robbins argues that the trial court abused its discretion by denying his motion to suppress the evidence discovered in his truck. Robbins argues that the only information that the officers had prior to searching Robbins's truck was a description of the suspect and of his vehicle and that this information was insufficient to establish probable cause to search his truck.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007); *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When, as here, the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal

4

ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818.

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador*, 221 S.W.3d at 672; *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App.), *cert. denied*, 558 U.S. 1093 (2009). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672. Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

Whether a search is reasonable is a question of law that we review de novo. *Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004). Reasonableness is measured by examining the totality of the circumstances. *Id.* at 63. It requires a balancing of the public interest and the individual's right to be free from arbitrary detentions and intrusions. *Id.* A search conducted without a warrant is per se unreasonable unless it falls within one of the "specifically defined and well-established" exceptions to the warrant requirement. *McGee v.*

5

*State*, 105 S.W.3d 609, 615 (Tex. Crim. App.), *cert. denied*, 540 U.S. 1004 (2003); *see Best v. State*, 118 S.W.3d 857, 862 (Tex. App.—Fort Worth 2003, no pet.).

The automobile exception to the warrant requirement allows a police officer to conduct a warrantless search of a vehicle when the officer has probable cause to believe that the vehicle contains evidence of a crime. *Neal v. State*, 256 S.W.3d 264, 282 (Tex. Crim. App. 2008), *cert. denied*, 555 U.S. 1154 (2009). The automobile exception does not require exigent circumstances to justify such a warrantless search. *Chambers v. Maroney*, 399 U.S. 42, 48, 90 S. Ct. 1975, 1979 (1970); *Neal*, 256 S.W.3d at 283. Probable cause to search exists when reasonably trustworthy facts and circumstances within the knowledge of the officer would lead persons of reasonable prudence to believe that an instrumentality of a crime or evidence pertaining to a crime will be found. *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007); *Estrada v. State*, 154 S.W.3d 604, 609 (Tex. Crim. App. 2005).

Here, Officer Graves responded to a burglary in progress at Ramon's house and arrived at Ramon's house within two or three minutes. Officer Graves had a description of the suspect and his truck, and on the way to Ramon's house, he passed a black truck heading away from Ramon's house on Sunset Drive, which is a dead-end street. After stopping the truck a quarter of a mile from Ramon's house, Officer Graves determined that the driver, Robbins, matched the description of the suspect. The officer learned that Robbins was

6

wanted in Tarrant County for a burglary of a habitation.  As Officer Graves was arresting Robbins on the outstanding warrant, one of the backup officers walked over to Robbins's truck and looked in the bed of his truck.  The fence-post driver was in plain view in the bed of the truck.[2]  Officers knew that the suspect had used a tool from Ramon's backyard to attempt to break down Ramon's front door.

Contrary to Robbins's argument, the officers knew more than just the description of the suspect and his vehicle prior to searching Robbins's truck.  The collective facts set forth above and known to the officers prior to searching Robbins's truck would have led a person of reasonable prudence to believe that an instrumentality of the burglary or evidence pertaining to the burglary would be found in Robbins's truck.  *See Neal*, 256 S.W.3d at 282–83; *Gutierrez*, 221 S.W.3d at 685; *Estrada*, 154 S.W.3d at 609; *see also Derichsweiler v. State*, 348 S.W.3d 906, 915 (Tex. Crim. App.) (noting that reasonable suspicion is based on "the totality of objective information known *collectively* to the cooperating police officers, including the 911 dispatcher"), *cert. denied*, 132 S. Ct. 150 (2011).  Viewing the evidence in the light most favorable to the trial court's ruling, we hold

---

[2]Robbins asks us to disregard the trial court's finding that officers observed a fence-post driver in plain view as unsupported by the record, but the videotape of the stop clearly shows an officer look into the bed of Robbins's truck, and Officer Graves testified at the suppression hearing that the fence-post driver was in plain view in the bed of the truck.  Robbins also asks us to disregard two other findings regarding the damage to Ramon's door; because we have not considered those findings in our review of this issue, we do not address his contentions.

that the officers had probable cause to search Robbins's truck.  *See Wiede*, 214 S.W.3d at 24; *Kelly*, 204 S.W.3d at 818.  We overrule Robbins's first issue.

## IV.  EXTRANEOUS OFFENSE EVIDENCE

In his second issue, Robbins argues that the trial court abused its discretion by admitting evidence that the license plates that police found in his truck had been taken from trailers belonging to Ramon's neighbor, Mitchell. Robbins argues that the only reason for that evidence's admissibility was to prove his intent to steal and that he did not contest that issue at trial.

We review a trial court's decision to admit evidence under an abuse of discretion standard.  *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); *Lagrone v. State*, 942 S.W.2d 602, 613 (Tex. Crim. App.), *cert. denied*, 522 U.S. 917 (1997).  A trial court does not abuse its discretion as long as the decision to admit the evidence is within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).

Evidence of extraneous offenses is not admissible at the guilt/innocence phase of a trial to prove that a defendant committed the charged offense in conformity with a bad character.  Tex. R. Evid. 404(b); *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011).  But extraneous offense evidence is admissible under both rules of evidence 403 and 404(b) if that evidence is relevant to a fact of consequence in the case apart from its tendency to prove conduct in conformity with character and the probative value of the evidence is

not substantially outweighed by unfair prejudice. *See* Tex. R. Evid. 403, 404(b); *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005). Extraneous offense evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See* Tex. R. Evid. 404(b); *Devoe*, 354 S.W.3d at 469.

Intent can be characterized as a contested issue to justify the admission of extraneous offense evidence "to help prove intent if the required intent for the primary offense cannot be inferred from the act itself or if the accused presents evidence to rebut the inference that the required intent existed." *Ludwig v. State*, 969 S.W.2d 22, 30 (Tex. App.—Fort Worth 1998, pet. ref'd). Once the defendant claims lack of intent, intent can no longer be inferred from other uncontested direct evidence, and the State is allowed to prove intent through evidence of other crimes, wrongs, or acts or to show violent acts where the defendant was the aggressor. *Id.* Moreover, the extraneous offense is relevant if its presence makes the appellant's criminal intent more likely than would be assumed in its absence. *See Prieto v. State*, 879 S.W.2d 295, 298 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd).

In this case, the State charged Robbins with burglary of a habitation with intent to commit theft. *See* Tex. Penal Code Ann. § 30.02(a). Thus, the State was required to prove that Robbins, without Ramon's effective consent, entered her house with the intent to commit theft. *See id.* § 30.02(a). Robbins argues that "this is a direct evidence case where the only directly contested question

was one of entry," that intent to commit theft was not contested, and that evidence of the stolen license plates would have only shown intent. The State counters that Robbins did contest his intent to steal throughout the trial and that, although direct evidence existed as it related to the identity of the perpetrator and the actions he took to gain entry into Ramon's house, no direct evidence existed about why Robbins attempted to break into the house.

Robbins argued during his opening statement that nothing was taken from Ramon's residence and that the State's proof may fall short of burglary of a habitation and instead only show criminal trespass of a habitation.[3] Criminal trespass occurs when a person enters another's property without that person's consent and the person had notice that entry was forbidden. *Id.* § 30.05(a) (West Supp. 2014). Criminal trespass does not require an intent to commit theft. *See id.* By placing his intent into issue, Robbins opened the door to evidence of other extraneous offenses that established his intent to commit theft and that rebutted his defensive theory. *See Bradshaw v. State*, 65 S.W.3d 232, 236 (Tex. App.—Waco 2001, no pet.) ("When a defendant claims his act was free from criminal intent, extraneous offenses are relevant to prove guilty intent."); *Robinson v. State*, 844 S.W.2d 925, 929 (Tex. App.—Houston [1st Dist.] 1992, no pet.) (holding that State may use extraneous offense to rebut defensive theory). And the fact that he possessed license plates that had been taken from trailers

---

[3]In fact, the jury received an instruction on criminal attempt of a criminal trespass.

belonging to Ramon's next-door neighbor makes it more likely that he was intending to steal something at Ramon's house. *See* Tex. R. Evid. 404(b); *Prieto*, 879 S.W.2d at 298. Finally, the probative value of this evidence in rebutting Robbins's defensive theory and as evidencing his intent to steal was not so slight so as to be substantially outweighed by the danger of unfair prejudice to Robbins. *See* Tex. R. Evid. 403. We hold that the trial court did not abuse its discretion by admitting the complained-of evidence. We overrule Robbins's second issue.

## V. SUFFICIENCY OF THE EVIDENCE

In his third issue, Robbins argues that insufficient evidence exists that he made an "entry" into Ramon's house for purposes of the burglary of a habitation statute. *See* Tex. Penal Code Ann. § 30.02(b).

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

11

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs*, 434 S.W.3d at 170. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170.

For purposes of the offense of burglary, the term "enter" means to intrude any part of the body or any physical object connected with the body into a building or habitation. Tex. Penal Code Ann. § 30.02(b). "Entry" is established when the plane of the opening of the house is broken and may be accomplished by, for example, placing a foot inside a door frame, cutting window or door screens, or breaking a door lock or frame. *See Ortega v. State*, 626 S.W.2d 746, 747 (Tex. Crim. App. [Panel Op.] 1981) (screen door latch was pulled off, wooden door's knob was disabled, and pry marks were on wooden door); *Martinez v. State*, 304 S.W.3d 642, 660 (Tex. App.—Amarillo 2010, pet. ref'd) (backdoor kicked in or shouldered open and deadbolt torn from jamb); *Moore v.*

12

*State*, 54 S.W.3d 529, 539–40 (Tex. App.—Fort Worth 2001, pet. ref'd) (defendant's foot placed inside door); *Williams v. State*, 997 S.W.2d 415, 417 (Tex. App.—Beaumont 1999, no pet.) (broken padlock and broken door frame on garage); *Woods v. State*, 814 S.W.2d 213, 215–16 (Tex. App.—Tyler 1991, no pet.) (cut window screens and door screen). Thus, entry can be any breach of the "close" of the residence. *Martinez*, 304 S.W.3d at 660.

Here, Ramon saw Robbins open up the glass storm door to her house and begin hitting the handle to her front door with a fence-post driver. She said he hit it three to five times and that it made a "very loud" noise. She testified that he "completely messed . . . up" the door and that he "push[ed] it in." As the State points out, following court of criminal appeals's precedent, Robbins's entry into the first layer of the front door by opening up the storm door is sufficient to constitute an "entry." *See Ortega*, 626 S.W.2d at 747 (holding that appellant's "entry into that part of the house between the screen door and the wooden door" constituted entry for purposes of penal code section 30.02). And the State introduced in evidence photographs of the door frame, showing that the interior portion of the frame had been busted away from the wall and was hanging into the house. We hold that the evidence is sufficient to establish that Robbins "enter[ed]" Ramon's house. *See* Tex. Penal Code Ann. § 30.02(b); *Ortega*, 626 S.W.2d at 747; *Williams*, 997 S.W.2d at 417. We overrule Robbins's third issue.

13

## VI. COMMENT ON FAILURE TO TESTIFY

In his fourth issue, Robbins complains that the State improperly commented on his failure to testify during its closing argument. Specifically, Robbins complains of the State's argument that Robbins never explained why he knocked down Ramon's door in the "three different statements" made by Robbins and admitted in evidence at trial.

A comment on an accused's failure to testify violates the accused's state and federal constitutional privileges against self-incrimination. *Canales v. State*, 98 S.W.3d 690, 695 (Tex. Crim. App.), *cert. denied*, 540 U.S. 1051 (2003); *Smith v. State*, 65 S.W.3d 332, 339 (Tex. App.—Waco 2001, no pet.). To determine if a prosecutor commented on the defendant's failure to testify, we must decide whether the language used was manifestly intended or was of such a character that the jury naturally and necessarily would have considered it to be a comment on the defendant's failure to testify. *See Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001); *Fuentes v. State*, 991 S.W.2d 267, 275 (Tex. Crim. App.), *cert. denied*, 528 U.S. 1026 (1999). The offending language must be viewed from the jury's standpoint, and the implication that the comment referred to the accused's failure to testify must be clear. *Bustamante*, 48 S.W.3d at 765. A mere indirect or implied allusion to the defendant's failure to testify does not violate the accused's right to remain silent. *Wead v. State*, 129 S.W.3d 126, 130 (Tex. Crim. App. 2004); *Patrick v. State*, 906 S.W.2d 481, 490–91 (Tex. Crim. App. 1995), *cert. denied*, 517 U.S. 1106 (1996).

At the guilt/innocence phase of trial in this case, the State introduced in evidence several items of evidence that included statements made by Robbins. First, the dash-cam recording of the stop shows Robbins telling the officers that he was coming from his bookkeeper's house at 616 Sunset Drive. Second, in a letter that Robbins sent the trial judge from jail, Robbins stated,

> [I]t is my understanding that to be charged with burglary of a habitation, one has to cross the threshold of the premis[]es. I did not cross the thre[]shold nor could I have, cause [sic] when I knocked the chain did not come off the door when it opened. . . . Furthermore, nothing was taken from the premis[]es nor was it my intentions to do such a thing. The lady even stated to the Azle Newspaper that I just drove away. The charge is incorrect and should also be dismissed. I would however, be willing to plea to a misdemeanor with time served and pay for any damage to the door I knocked in as a solution to this issue.

Finally, in a recorded conversation that Robbins had with his friend Mitchell (Ramon's next-door neighbor) while Robbins was in jail, he discussed the letter he sent to the judge and made statements similar to that in the letter, asserting that he did not cross the threshold of Ramon's door to constitute burglary.

In closing arguments, the prosecutor argued,

> But I am going to ask you to consider the three different statements that we have from him that have been put into evidence. And in those three statements, did he ever give you a reason for going there and bashing this lady's door in that made any sense or any reason at all?

When Robbins objected to this as a comment on his failure to testify, the prosecutor attempted to clarify that he was just referring to three statements made by Robbins that were introduced in evidence. The trial court sustained

15

Robbins's objection and instructed the jury to disregard the comment. The trial court denied Robbins's motion for mistrial.

Viewed from the jury's standpoint, the complained-of argument by the prosecutor was a proper comment on, or summation of, the evidence presented at trial. *See Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008) (explaining that summations of the evidence and reasonable deductions from the evidence are permissible areas of jury argument), *cert. denied*, 556 U.S. 1211 (2009). The prosecutor clarified that he was referring to the statements admitted in evidence and continued his argument by asserting that the defendant, in his own words, admitted to wrongdoing but denied that he intended to steal anything. The prosecutor continued his closing argument by asserting that Robbins must have intended to commit theft, "Now, what on [E]arth could he be doing? Could he be selling Girl Scout cookies? Avon? Did he want to go in and watch TV? What did he want to do? Oh, that's right, he was looking for his accountant. This is how he goes and gets accounting done."

The complained-of comment was not a comment on the absence of evidence that only the defendant could supply but was instead a comment on his statements, admitted in evidence at trial, in which he admitted to knocking down Ramon's door but said he did not do so with the intent to commit theft. Because the State's argument was proper, we overrule Robbins's fourth issue.

## VII. CONCLUSION

Having overruled Robbins's four issues, we will affirm the trial court's judgment.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL:  GARDNER, WALKER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  February 26, 2015