Ronnie Lee PRICE, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 01–06–00647–CR, 01–06–00648–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

July 6, 2007.

Douglas M. Durham, Houston, for Appellant.

Charles A. Rosenthal, Jr., District Attorney–Harris County, Carol M. Cameron, Assistant District Attorney, Houston, for Appellee.

Panel consists of Justices NUCHIA, HANKS and BLAND.

## OPINION

JANE BLAND, Justice.

Ronnie Lee Price ("Price") appeals his conviction for capital murder under section 19.03(a)(2) of the Texas Penal Code, for which the State did not seek the death penalty. Price, who received an automatic life sentence, claims that the indictment was inadequate to charge him with capital murder and protests the admission of evidence of a protective order that his estranged wife had obtained to keep him away from her home. Finding no error, we affirm.

## Background

Price and Sharon Wilkins Price ("Sharon") separated in about November 2004 after approximately eleven years of marriage. Sharon remained in the home, which she held in her name. In January 2005, she secured a protective order against Price. The protective order contains a finding that Price "has committed family violence," and prohibited Price from:

a) Committing family violence against SHARON PRICE, RONNELL PRICE and KEVIN WILKINS.

b) Communicating directly with SHAR-ON PRICE, RONNELL PRICE and KEVIN WILKINS in a threatening or harassing manner.

c) Communicating a threat through any person to SHARON PRICE, RON-NELL PRICE and KEVIN WIL-KINS.

d) Going to or near the residence or place of employment or business of SHARON PRICE, RONNELL PRICE and KEVIN WILKINS, specifically ... from coming with[in] 150 feet of [Sharon Price's] place of residence ... or [ ] employment.

e) Possessing a firearm....

f) Engaging in conduct directed specifically toward SHARON PRICE, RONNELL PRICE and KEVIN WILKINS, including following SHARON PRICE, RONNELL PRICE and KEVIN WILKINS, that is likely to harass, annoy, alarm, abuse, torment, or embarrass SHAR-ON PRICE, RONNELL PRICE and KEVIN WILKINS.

g) Going to or near the child care facility or school of RONNELL PRICE and KEVIN WILKINS....

Sharon filed for divorce February 2005.

Late in the evening of April 21, 2005, Sharon's electricity went out. She called her cousin, Clyde Ball, who lived about a block away, to find out whether the electricity had gone out there. Ball answered the phone and told Sharon he would head over to check her electricity. As he walked toward the house, he saw Price, who also lived nearby, walking in the neighborhood. A short time later, he saw Price again, but this time in his truck. After Ball had sat outside the door talking with Sharon for a short time, Price approached the door. He angrily asked Sharon why she had invited Ball to the house at that time of night.

Ball walked away to try to defuse the situation. After he started on his way home, he heard a lot of banging, "like someone was kicking in something."

When Ball arrived home, he told Mitzi Ball, his cousin and Sharon's sister, about the situation at Sharon's house. Mitzi changed out of her nightclothes so that she could go to Sharon's home and find out what was happening.

Meanwhile, Price and Sharon's nine-year-old son Ronell, who had been asleep in his room, was awakened by the sound of a gunshot. Ronell left his room to investigate and found Price walking around and holding Sharon's gun. When Ronell asked where his mother was, Price responded, "I think your mother is dead." Frightened, Ronell ran back to his room and hid under his desk.

When Mitzi arrived at Sharon's home, she called for Sharon from the front entry, noting that a bar had been broken out of the burglar bars over the front door. Price opened the door and shot Mitzi twice, once in the neck and once in the hand. She fell in the yard, unable to move. A short time later, Price returned, kneeled over Mitzi, held the gun to her head and pulled the trigger twice, but the gun did not discharge.

Price left the scene and called Leo Wilson, with whom he had been living since late January or early February 2005. Price told Wilson he was in trouble. Price explained to Wilson that he had gone to Sharon's home to talk to her, but they had gotten into it and he took the gun from her and shot her and her sister.

The State charged Price under two indictments, one for the aggravated assault of Mitzi and the other for the capital murder of Sharon. Before trial, Price except-

ed to the substance of the capital murder indictment, which the trial court denied.

Also before trial, on May 23, 2006, the State filed an amended notice of intent to use prior convictions and extraneous offenses in its case-in-chief. The State gave notice that it intended to introduce evidence that Price had previously assaulted Sharon on October 17, 2004 and had been convicted of misdemeanor assault on a family member on April 6, 2006—approximately two weeks before Sharon Price's death—"to show, among other things, motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The State filed a second amended notice of its intent to use prior convictions and extraneous offenses on June 20, 2006. This amended notice added two more incidents involving Sharon, an October 2005 incident in which Price threatened to kill Sharon and a September 2005 incident in which Price grabbed Sharon and threw her against a wall, as well as Price's actions toward Clyde and Mitzi Ball on April 22, 2005.

Trial began on June 27, 2006. During the questioning of Detective Tonry of the Harris County Sheriff's Office, who had investigated the crime scene, Detective Tonry mentioned that he had discovered a protective order was on file against Price. The defense timely objected to this statement as violating the motion in limine and moved for a mistrial. The trial court denied the motion, but promptly gave the jury a lengthy limiting instruction.

The next morning, before the jury arrived, the trial court heard additional argument from the parties concerning the admissibility of the protective order. The court decided to allow admission of the protective order as an exhibit and informed the jury that it could consider the order during its deliberations.

The jury ultimately found Price guilty on both charges. On June 29, 2006, the court sentenced Price to a $10,000 fine and twenty years' imprisonment for the aggravated assault conviction and a life term of imprisonment for the capital murder conviction. Price noticed this appeal on the same date.

**Sufficiency of Indictment**

 Price contends that the trial court erred in denying his exception to the substance of the capital murder indictment because the State's pleading did not track the language of the capital murder statute. Section 19.03(a) of the Texas Penal Code explains that a person commits capital murder

> if the person commits murder as defined under Section 19.02(b)(1) and ... the person intentionally commits the murder in the course of committing or attempting to commit ... burglary...."

TEX. PEN.CODE ANN. § 19.03(a)(2) (Vernon Supp.2006). The indictment at issue reads as follows:

> [I]n Harris County, Texas, RONNIE LEE PRICE ... on or about APRIL 22, 2005, did then and there unlawfully, while in the course of committing and attempting to commit the BURGLARY OF HABITATION owned by SHARON WILKINS, intentionally cause the death of SHARON WILKINS, with a deadly weapon, namely, A FIREARM.

Price contends that the indictment failed to sufficiently charge the offense of capital murder because it does not expressly state that Price intentionally committed murder.

The sufficiency of an indictment is a question of law. *State v. Moff,* 154 S.W.3d 599, 601 (Tex.Crim.App.2004). Accordingly, we review the trial court's denial of the exception de novo. *Id.*

An exception to the substance of the indictment should be granted only when the indictment: (1) fails to charge that the defendant committed a violation of law; (2) shows on its face that the charged offense is not subject to prosecution because it is barred by a lapse of time, or was committed after the finding stated in the indictment; (3) contains some matter that constitutes a legal defense or bar to the prosecution; or (4) shows on its face that the court lacks jurisdiction to try defendant for the crime charged. TEX.CODE CRIM. PROC. ANN. art 27.08 (Vernon 2006). Price's issue on appeal falls into the first category.

■ Ordinarily, an indictment is legally sufficient if it tracks the penal statute in question. *Moff*, 154 S.W.3d at 602; *Santana v. State*, 658 S.W.2d 612, 613 (Tex.Crim. App.1983). Section 19.02(b)(1) of the Penal Code defines murder for the purposes of Chapter 19, explaining that a person commits murder if that person "intentionally or knowingly causes the death of an individual." TEX. PEN.CODE ANN. § 19.02(b)(1) (Vernon 2006). Rather than simply tracking the capital murder statute, then, the indictment charging Price incorporated the more specific definition of "murder" from the Penal Code into the charging language. *See* TEX. PEN.CODE ANN. § 19.02(b)(i).

According to Price, it is inadequate for the indictment to say "intentionally cause the death," when the capital murder statute says "intentionally commit murder," and, as a result, it fails to charge him with capital murder. We disagree. The indictment correctly expressed the level of in-

tent required for a charge of capital murder without the reiteration urged by Price. *See* TEX.CODE CRIM. PROC. ANN. art. 21.17 (Vernon 1989) ("Words used in a statute to define an offense need not be strictly pursued in the indictment; it is sufficient to use other words conveying the same meaning, or which include the sense of the statutory words.").

In *Crank v. State,* the Court of Criminal Appeals held that virtually identical language was sufficient to charge the defendant with capital murder.[1] 761 S.W.2d 328, 349, 352 (Tex.Crim.App.1988), *overruled on other grounds by Alford v. State,* 866 S.W.2d 619 (Tex.Crim.App.1993); *cf. Larson v. State,* 759 S.W.2d 457, 462 (Tex. App.-Houston [14th Dist.] 1988, pet. ref'd) (holding that indictment that tracked language of indecency with child statute and incorporated statutory definition of "sexual contact" properly alleged offense charged). The indictment charging Price simply incorporates the applicable definition of "murder" from the Penal Code and thus properly charges him with capital murder.

### Evidence of Extraneous Offenses

Price's remaining issues on appeal challenge the admission of evidence of the protective order, a copy of which was found in his truck. He contends that (1) the trial court should have granted him a mistrial when Officer Tonry mentioned the protective order, and (2) the trial court abused its discretion in admitting the protective order into evidence. Because we find the second issue dispositive, we address it first.

---

1. The relevant portions of the indictment in *Crank* read as follows:
 .... Denton Alan Crank .... did ... while in the course of committing and attempting to commit the robbery of SHIRLEY PO-TEET, intentionally cause the death of TER-

RY ORINGDERFF ... by shooting the Complainant with a gun.
 *Crank v. State,* 761 S.W.2d 328, 349 (Tex. Crim.App.1988), *overruled on other grounds by Alford v. State,* 866 S.W.2d 619 (Tex.Crim. App.1993).

*Admissibility*

In investigating the crime scene, Harris County Deputy Smith found several items in the truck Price was driving the night of April 22, including a copy of the January 2005 protective order. The protective order contains a finding that Price "has committed family violence," and expressly prohibited Price from going to or near Sharon's house, communicating directly with Sharon, possessing a firearm, or harassing Sharon.

■ While the protective order does not identify any specific act that justified the issuing court's finding that Price committed family violence, it permits the inference that Price engaged in prior misconduct that is not alleged in either indictment, and thus requires treatment as extraneous offense evidence. *See Manning v. State*, 114 S.W.3d 922, 926 (Tex.Crim.App.2003) (defining extraneous offense as any act of misconduct, whether resulting in prosecution or not, not shown in indictment). We review a trial court's ruling to admit extraneous offense evidence for an abuse of discretion. *Rankin v. State*, 974 S.W.2d 707, 718 (Tex. Crim.App.1996) (op. on reh'g); *Wolfberg v. State*, 73 S.W.3d 441, 443 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd). A trial court acts within its discretion as long as its decision to admit evidence is within the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391–92 (Tex.Crim.App.1990) (op. on reh'g).

Evidence of extraneous acts may be admissible in this murder proceeding under article 38.36(a) of the Texas Code of Crimi-

nal Procedure, which allows the admission of all relevant evidence of the previous relationship between the accused and the murder victim. Tex.Code Crim. Proc. Ann. art. 38.36(a) (Vernon 2005);[2] *Garcia v. State*, 201 S.W.3d 695, 704–05 (Tex.Crim. App.2006) (trial court did not abuse its discretion in admitting evidence of incident that occurred approximately nine months before victim's murder in which defendant kicked victim out of car and continued home with their two children); *Rogers v. State*, 183 S.W.3d 853, 861–63 (Tex.App.-Tyler 2005, no pet.) (protective order illustrates nature of ongoing relationship between defendant and victim and shows its deterioration in year before shooting, which was relevant for jury to assess defendant's mental state and actions). The ultimate determination of whether extraneous offense evidence is admissible, however, still depends on whether it falls within the limitations set forth in the Texas Rules of Evidence. *Garcia*, 201 S.W.3d at 702–05.

■ Texas Rule of Evidence 404(b) prohibits admission of extraneous offenses to prove a person's character or to show that the person acted in conformity with that character. *See* Tex.R. Evid. 404(b). Extraneous offenses may, however, be admissible to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Montgomery*, 810 S.W.2d at 387–88. Extraneous evidence may also be admissible to rebut defensive theories raised by the State's witnesses during cross-examination. *Ransom v. State*, 920 S.W.2d 288, 301 (Tex.Crim.App.1994); *see also Moses*

---

**2.** Article 38.36(a) reads as follows:

In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the

accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

Tex.Code Crim. Proc. Ann. art 38.36(a) (Vernon 2005).

*v. State*, 105 S.W.3d 622, 626 (Tex.Crim. App.2003) (noting that rebuttal of defensive theory is "one of the permissible purposes for which relevant evidence may be admitted under Rule 404(b).").

■ A dispute concerning the defendant's intent justifies the admission of extraneous offense evidence if the required level of intent for the offense cannot be inferred from the act itself or if the defendant presents evidence to rebut the inference that the required intent existed. *Ludwig v. State*, 969 S.W.2d 22, 30 (Tex. App.-Fort Worth 1998, pet. ref'd) (after appellant repeatedly stated that he entered apartment solely to get his daughter and that he could never hurt victim, evidence that appellant had ˙repeatedly threatened and inflicted violence on victim was relevant both to rebut appellant's defensive theory and establish his intent); *McGee v. State*, 725 S.W.2d 362, 364 (Tex. App.-Houston [14th Dist.] 1987, no pet.). In cross-examining the State's witnesses and closing argument, the defense tried to instill doubt about whether Price: (1) kicked down the door; (2) had a legal right to enter the house; (3) acted in self-defense; and (4) had the gun when Sharon was shot.

When Price's cross-examination of the State's witnesses brought Price's intent into question as a defensive theory, it cast doubt upon an inference of intent from other uncontested direct evidence. The State then became entitled to prove intent through evidence of other crimes, wrongs, or acts. *See Johnson v. State*, 932 S.W.2d 296, 302 (Tex. App–Austin 1996, pet. ref'd); *see also Prieto v. State*, 879 S.W.2d 295, 298 (Tex.App.-Houston [14th Dist.] 1994, pet. ref'd) (past abusive treatment by defendant made criminal intent to injure more likely); *George v. State*, 841 S.W.2d 544, 547–48 (Tex. App–Houston [1st Dist.] 1992) (previous violence between victim

and defendant constituted evidence of criminal intent), *aff'd*, 890 S.W.2d 73 (Tex. Crim.App.1994). The protective order, then, was relevant and admissible on this ground.

■ The protective order is also admissible as contextual evidence. *See Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim.App.2000); *Swarb v. State*, 125 S.W.3d 672, 682 (Tex.App.-Houston [1st Dist.] 2003, pet. dism'd) (finding that arrest warrant provided jury with context to show why officers were searching for appellant and how they found controlled substance in his vehicle). "The purpose of admitting extraneous evidence as same transaction contextual evidence is to place the instant offense in context." *Nguyen v. State*, 177 S.W.3d 659, 667 (Tex.App.-Houston [1st Dist.] 2005, pet. ref'd). Because the detectives found the protective order in Price's truck, its introduction was relevant to help the jury understand how the circumstances surrounding the charged crime fit together. *See Camacho v. State*, 864 S.W.2d 524, 532 (Tex.Crim. App.1993).

■ Price asserts that the trial court nevertheless should have excluded evidence of the protective order under Texas Rule of Evidence 403. *See* Tex.R. Evid. 403. Even if evidence qualifies for admission under rule 404(b), it may still be excluded under Rule 403 if the danger of unfair prejudice substantially outweighs its probative value. *Rogers v. State*, 991 S.W.2d 263, 266 (Tex.Crim.App.1999). In making this determination, a trial court should consider (1) how probative the evidence of the extraneous offense is, (2) the potential for the extraneous offense to impress the jury in some irrational but indelible way, (3) the amount of time the proponent will need to develop the evidence, and (4) the proponent's need for the evidence to prove a fact of consequence. *Wyatt v.*

*State,* 23 S.W.3d 18, 26 (Tex.Crim.App. 2000). Only a significant disparity between the degree of prejudice of the evidence and its probative value will tip the balance toward requiring exclusion. *Jones v. State,* 944 S.W.2d 642, 652 (Tex.Crim. App.1996).

Sharon secured the protective order a few months before her death. Moreover, a copy of the protective order was found in the truck Price was driving at the time of the incident. Both of these facts speak to the strong probative value the protective order had in demonstrating the nature of the parties' relationship as well as Price's intent. The jury heard about the protective order only briefly, and did not receive any information concerning the specific acts that may have supplied grounds for its issuance, which would have made the evidence substantially more inflammatory. The protective order supports the State's theory that Price entered Sharon's home with the intent to commit a felony, theft, or assault, an essential element of the charged offense of capital murder. *See* TEX. PEN.CODE ANN. § 19.03(a)(2). Given the high probative value of this evidence, as well as the minimal emotional impact the protective order had, particularly in comparison to what the underlying extraneous offenses might have had, we conclude that the decision to admit the protective order falls within the zone of reasonable disagreement. Thus, we hold that the trial court did not abuse its discretion in admitting it.

*Notice*

 Price further contends the protective order should have been excluded because the State failed to give him reasonable notice of its intent to use the protective order as evidence during its case-in-chief. A defendant who timely requests notice of the State's intent to introduce extraneous offenses during the case-in-

chief is entitled to notice "in the same manner as the state is required to give notice under Rule 404(b)." TEX.CODE CRIM. PROC. ANN. art. 38.37, § 3 (Vernon 2006); *Hernandez v. State,* 176 S.W.3d 821, 824 (Tex.Crim.App.2005). The purpose of rule 404(b)'s notice requirement is to prevent surprise and inform the defendant of the offenses the State plans to introduce at trial. *Hernandez,* 176 S.W.3d at 823–24; *Hayden v. State,* 66 S.W.3d 269, 272 (Tex. Crim.App.2001).

The record belies Price's contention. Among other enumerated incidents, the State notified Price of its intent to introduce evidence of Price's conviction for misdemeanor assault on a family member, ostensibly based on one of the other incidents identified by the State in its May 23, 2006 or June 6, 2006 notices to Price. Price has not shown how this notice failed to constitute reasonable notice of the State's intent to offer evidence that Price had committed family violence. The State gave Price timely notice of bad acts and extraneous offenses that could serve as grounds for issuance of the protective order. We therefore hold that the trial court did not abuse its discretion in concluding that the State's notice was adequate, in that it specifically described incidents of family violence.

*Motion for Mistrial*

Finally, Price argues that the trial court abused its discretion by failing to grant his request for a mistrial following Officer Tonry's testimony. Because the trial court did not err in admitting evidence of the protective order, the trial court did not err in denying Price a mistrial for a witness's testimony that a protective order had been entered against Price. Moreover, Price's own defensive strategy opened the door for admission of the protective order and thus cured any harm which might have flowed from Officer Ton-

ry's statement. *See Daggett v. State,* 187 S.W.3d 444, 451–52 (Tex.Crim.App.2005); *Blackwell v. State,* 193 S.W.3d 1, 10–13 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd).

### Conclusion

The trial court did not err in denying Price's exception to the substance of the capital murder indictment. Also, because the trial court acted within its discretion in admitting extraneous offense evidence in the form of the protective order, it correctly denied Price's motion for mistrial.

We therefore affirm the judgment of the trial court.